IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
Richmond Division

UNITED STATES OF AMERICA,

v.                                                        Criminal Case No. 3:23cr10

GEORGE FRANKLIN GIBSON, JR.,

Defendant.

## MEMORANDUM OPINION

This matter comes before the Court on Defendant George Franklin Gibson, Jr.'s Letter Motion for Reconsideration[1] (the "Motion" or "Motion for Compassionate Release"). (ECF No. 84.) The United States responded in opposition, (ECF No. 87), and Mr. Gibson replied, (ECF No. 89).

This matter is ripe for disposition. The Court dispenses with oral argument because the materials before it adequately present the facts and legal contentions, and argument would not aid the decisional process. For the reasons articulated below, the Court will deny the Motion.

## I. Background

### A.    Mr. Gibson's Underlying Offense

On December 20, 2022, the United States charged Mr. Gibson, by way of a Criminal Complaint, with one count of Possession of Methamphetamine with Intent to Distribute in

---

[1] As discussed below, Mr. Gibson originally filed a Letter Motion seeking reconsideration of an enhancement the Court applied to Mr. Gibson's sentencing. (ECF No. 84, at 1.) In its response, the United States treated Mr. Gibson's Letter Motion as a motion for compassionate release. (ECF No. 87, at 1.) In his reply, Mr. Gibson likewise argued that the Court should treat Mr. Gibson's Letter Motion as a motion for compassionate release. (ECF No. 89, at 1.) Accordingly, the Court refers to the Letter Motion as the "Motion" or the "Motion for Compassionate Release."

violation of 21 U.S.C. §§ 841(a)(1) and (b)(1)(C). (ECF No. 1, at 1.) On January 17, 2023, a Grand Jury for the Eastern District of Virginia, Richmond Division, returned a one-count Indictment again charging Mr. Gibson with Possession of Methamphetamine with Intent to Distribute in violation of 21 U.S.C. § 841(a)(1) and (b)(1)(C). (ECF No. 12, at 1.)

On February 29, 2024, Mr. Gibson pleaded guilty to Count One of the Indictment. (ECF Nos. 57, 58, 59.) As part of his plea agreement, Mr. Gibson signed a Statement of Facts describing the conduct underlying his offense. (ECF No. 59.) "On March 17, 2022, a King and Queen County Sheriffs Office deputy responded to a report that [Mr. Gibson] was parked near a residence on Mantua Road, possibly in violation of an emergency protective order." (ECF No. 59 ¶ 2.) The deputy spoke with Mr. Gibson about the emergency protective order, and while doing so, "could see bullets in the center arm rest cutout." (ECF No. 59 ¶ 3.) "After another deputy arrived, they placed [him] under arrest for violating the emergency protective order." (ECF No. 59 ¶ 3.)

The deputies conducted a search of Mr. Gibson's truck incident to his arrest and found suspected methamphetamine in the center console and a backpack on the passenger side of the vehicle. (ECF No. 59 ¶ 4.) The deputies obtained search warrants for the backpack and the premises next to which Mr. Gibson was parked. During their search of the backpack, the deputies found "suspected marijuana, a digital scale, smoking devices, and packaging materials, as well as suspected psychedelic mushrooms." (ECF No. 59 ¶ 5.) The deputies also searched a padlocked shed on the property, which contained "suspected marijuana and marijuana plants, packaging materials, a loaded 9mm handgun, and a safe. Inside the safe was additional suspected methamphetamine." (ECF No. 59 ¶ 5.) The Virginia Department of Forensic Sciences ultimately determined that the deputies recovered 187.59 grams of methamphetamine

2

from the truck, the backpack in the truck, and the shed. (ECF No. 59 ¶ 6.) The deputies also recovered $14,190.88 from the shed and from Mr. Gibson's person. (ECF No. 71 ¶ 12.) The Statement of Facts explains that Mr. Gibson "possessed a dangerous weapon (the 9mm handgun) under Sentencing Guideline § 2D 1.1 (b)(1)." (ECF No. 59 ¶ 7.)

**B.      Mr. Gibson's Sentence**

Prior to Mr. Gibson's sentencing, the United States Probation Office prepared a Presentence Report ("PSR"), summarizing Mr. Gibson's criminal history and personal characteristics. (ECF No. 71.) The PSR reported a Total Offense Level of 33 and a Criminal History Category of I, resulting in an advisory guideline range of 135 to 168 months of incarceration. (ECF No. 71 ¶¶ 59–60.) The PSR reported that Mr. Gibson had a "criminal history score of zero." The Probation Office noted in the PSR that, as explained in the Statement of Facts, Mr. Gibson possessed a dangerous weapon. Accordingly, the PSR recommended a two-point enhancement under United States Sentencing Guideline § 2D1.1(b)(1) to reflect his possession of a dangerous weapon. (ECF No. 71 ¶ 20.)

On May 29, 2024, the Court sentenced Mr. Gibson to 60 months' imprisonment, (ECF No. 73, at 2), well below the Guideline range of 135 to 168 months' imprisonment. In doing so, the Court granted a downward variance. (ECF No. 74, at 3.) In doing so, the Court adopted the PSR, including its recommended two-point enhancement for Mr. Gibson's possession of a dangerous weapon. (ECF No. 74, at 1.)

On October 28, 2024, Mr. Gibson filed a letter motion seeking, among other things, "reconsideration [of] the gun enhancement [he] received" under U.S.S.G. § 2D1.1(b)(1). (ECF No. 79, at 1.) The Court interpreted his letter motion as a request for compassionate release under 18 U.S.C. § 3582(c), which contains a threshold requirement that a defendant seeking

3

compassionate release exhaust their administrative remedies within the Bureau of Prisons before seeking compassionate release before the Court. Because Mr. Gibson failed to exhaust his administrative remedies before filing his letter motion, the Court denied his request for "reconsideration." (ECF No. 83, at 2.)

On August 11, 2025, Mr. Gibson filed the instant Motion. In his Motion, Mr. Gibson again seeks reconsideration of the two-point firearm enhancement applied during his sentencing. He also requests that he "be eligible for the zero point offender amendment." (ECF No. 84, at 1.) Mr. Gibson represents that he has "exhausted all of [his] administrative remedies." (ECF No. 84, at 1.) On October 30, 2025, the Court ordered the United States and the Probation Office to respond to the Motion. (ECF No. 86.) On November 5, 2025, the United States responded to the Motion, arguing that the Court should analyze the Motion under the compassionate release provisions of 18 U.S.C. § 3582(c). (ECF No. 87, at 1.) On November 6, 2025, the Probation Office also responded to the Motion. (ECF No. 88.) On November 10, 2025, Mr. Gibson replied to the United States' response and also argued that the Court should analyze his Motion by applying the compassionate release provisions of 18 U.S.C. § 3582(c). (ECF No. 89, at 1.) The Court therefore construes Mr. Gibson's Motion as a motion for compassionate release and addresses his requests accordingly.

## II.  Compassionate Release Under the First Step Act

### A.    Legal Standard

Congress authorized "compassionate release" in 18 U.S.C. § 3582(c)(1)(A).[2] *United States v. Burleigh*, 145 F.4th 541, 547 (4th Cir. 2025).  18 U.S.C. § 3582(c) recognizes the "general rule" that a court cannot modify a sentence once it has been imposed.  *Burleigh*, 145 F.4th at 547.  But 18 U.S.C. § 3582(c)(1)(A) contains "an exception to that rule, in which courts

_____

[2] 18 U.S.C. § 3582(c)(1)(A) provides:

(c) Modification of an imposed term of imprisonment.—The court may not modify a term of imprisonment once it has been imposed except that—(1) in any case–

> (A) the court, upon motion of the Director of the Bureau of Prisons, or upon motion of the defendant after the defendant has fully exhausted all administrative rights to appeal a failure of the Bureau of Prisons to bring a motion on the defendant's behalf or the lapse of 30 days from the receipt of such a request by the warden of the defendant's facility, whichever is earlier, may reduce the term of imprisonment (and may impose a term of probation or supervised release with or without conditions that does not exceed the unserved portion of the original term of imprisonment), after considering the factors set forth in [18 U.S.C. §] 3553(a) to the extent that they are applicable, if it finds that–
>
>> (i) extraordinary and compelling reasons warrant such a reduction; or
>>
>> (ii) the defendant is at least 70 years of age, has served at least 30 years in prison, pursuant to a sentence imposed under section 3559(c), for the offense or offenses for which the defendant is currently imprisoned, and a determination has been made by the Director of the Bureau of Prisons that the defendant is not a danger to the safety of any other person or the community, as provided under section 3142(g);
>
> and that such a reduction is consistent with applicable policy statements issued by the Sentencing Commission[.]

18 U.S.C. § 3582(c)(1)(A).

5

may consider motions made by defendants who have exhausted their administrative remedies and are seeking a sentence modification." *Id.*

A court can grant a compassionate release motion if it finds that:

(1) "extraordinary and compelling reasons warrant such a reduction,"

(2) "such a reduction is consistent with applicable policy statements issued by the [United States] Sentencing Commission," and

(3) the 18 U.S.C. § 3553(a) factors weigh in favor of granting relief, to the extent that they are applicable.

*Burleigh*, 145 F.4th at 547 (citing 18 U.S.C. § 3582(c)(1)).

The defendant bears the burden to prove that extraordinary and compelling reasons exist for release under § 3582(c)(1)(A). *See United States v. Wesley*, No. 1:97-cr-382-2 (JKW), 2025 WL 2623449, at *2 (E.D. Va. Sept. 11, 2025) (citing *United States v. Hargrove*, 30 F.4th 189, 195 (4th Cir. 2022)).

### 1.    Elements 1 and 2: Extraordinary and Compelling Reasons For a Reduction and the Sentencing Commission's Policy Statement

"Elements one and two are supposed to work together." *Burleigh*, 145 F.4th at 547–48. "Because [§] 3582(c)(1)(A)(i) does not attempt to define the 'extraordinary and compelling reasons' that might merit compassionate release, the 'Sentencing Commission, pursuant to authority granted it by Congress,' does so instead." *Id.* (quoting *United States v. McCoy*, 981 F.3d 271, 276 (4th Cir. 2020)).

### a.    The Sentencing Commission's Policy Statement

The United States Sentencing Commission issued a policy statement governing extraordinary and compelling reasons that justify compassionate release. *See* U.S.S.G. § 1B1.13(b).  It identifies six instructive categories of extraordinary and compelling reasons that may allow for a sentence reduction.  These include:

(1) certain medical circumstances of the defendant, such as terminal illness or the inability to receive specialized medical care while incarcerated;

(2) the defendant's age;

(3) the defendant's family circumstances;

(4) the fact that the defendant, while in custody, was the victim of sexual or physical abuse committed by, or at the direction of, a correctional officer;

(5) "any other circumstances or combination of circumstances . . . similar in gravity to" the circumstances "described in paragraphs (1) through (4)"; and

(6)  the defendant's receipt of an "unusually long sentence."

U.S.S.G. § 1B1.13(b)(1)–(6).[3]

### b.    Other Extraordinary and Compelling Circumstances

While the Sentencing Commission's policy statement on extraordinary and compelling circumstances is helpful, it is not binding.  In considering whether "extraordinary and compelling reasons warrant . . . a reduction," 18 U.S.C. § 3582(c)(1)(A)(i), "district courts are empowered . . . to consider *any* extraordinary and compelling reason for release that a defendant might raise," *McCoy*, 981 F.3d at 284; *see also United States v. Davis*, 99 F.4th 647, 658 (4th Cir. 2024) (relying on *McCoy* and reiterating that "district courts [can] consider any extraordinary and compelling reasons for release raised by a defendant").  As the United States

---

[3] *See* Appendix A, U.S.S.G § 1B1.13(b) (2025).

7

Court of Appeals for the Fourth Circuit recently explained, "there is no exhaustive list as to what may be considered extraordinary and compelling, and it is well within [a] district court's discretion to find other reasons"—that is, reasons other than those enumerated in the Sentencing Commission's policy statement—"constitut[ing] an extraordinary and compelling factor that weigh[s] in favor of granting relief." *United States v. Johnson*, 143 F.4th 212, 216 (4th Cir. 2025) (upholding district court's grant of compassionate release where "the district court found the sentencing disparities" between the defendant and his coconspirators "constituted an extraordinary and compelling reason to grant compassionate release").

If extraordinary and compelling circumstances exist, the Court "must then consider whether the factors in § 3553(a) support such a decrease." *Burleigh*, 148 F.4th at 548.

### 2. <u>Element 3</u>: The Statutory Sentencing Factors Enumerated in 18 U.S.C. § 3353(a)

"The § 3553(a) factors include 'the nature and circumstances of the offense' as well as the defendant's history and characteristics, the 'kinds of sentences available,' and 'the need to avoid unwarranted sentence disparities among defendants with similar records who have been found guilty of similar conduct.'" *Burleigh*, 148 F.4th at 548 (quoting § 3553(a)(1), (3), (6)). "They also include the need for the sentence 'to reflect the seriousness of the offense, to promote respect for the law, . . . to provide just punishment for the offense,' to deter criminal conduct, to protect the public and to provide the defendant with appropriate resources such as 'medical care' and 'vocational training.'" *Id.* (quoting § 3553(a)(2)).

District courts enjoy "'broad discretion'" in analyzing the § 3553(a) factors when considering a motion for compassionate release. *Id.* (quoting *United States v. Bethea*, 54 F.4th 826, 834 (4th Cir. 2022)). And "district courts are only required to address the § 3553(a) factors 'to the extent that they are applicable.'" *Id.* (quoting § 3553(a)).

8

## C.    <u>Exhaustion of Administrative Remedies</u>

A defendant seeking compassionate release is generally required to exhaust his or her administrative remedies prior to bringing a motion before the district court. To do so, the defendant must first apply to the BOP to bring a motion on his or her behalf. 18 U.S.C. § 3582(c)(1)(A). After making the request to BOP, a defendant can proceed to district court under the earlier of one of "two routes." *United States v. Ferguson*, 55 F.4th 262, 268 (4th Cir. 2022) (quotation omitted).

Under the first route, a defendant may file a motion for compassionate release in a district court "after [he or she] has fully exhausted all administrative rights to appeal a failure of the [BOP] to bring a motion on [his or her] behalf." 18 U.S.C. § 3582(c)(1)(A). That is, the defendant must exhaust his or her administrative remedies with the BOP. *Ferguson*, 55 F.4th at 268. The second route permits a defendant to "proceed directly to district court," *McCoy*, 981 F.3d at 283, if the BOP does not act on the defendant's request within "30 days from the receipt of such a request by the warden," 18 U.S.C. § 3582(c)(1)(A); *see also McCoy*, 981 F.3d at 283 ("Congress, aware of the BOP's history of extensive delays, also provided a '30-day lapse' alternative, under which a defendant may proceed directly to district court if his [or her] request is not acted on within that time.").

A court may waive the exhaustion requirement in certain circumstances, including where pursuing exhaustion would be futile, result in inadequate relief, or subject the defendant to undue prejudice. *United States v. Evans*, 504 F. Supp. 3d 519, 525 (E.D. Va. 2020). In addition, because the exhaustion requirement is "non-jurisdictional," it is "waived if . . . not timely raised" by the United States. *United States v. Muhammad*, 16 F.4th 126, 130 (4th Cir. 2021).

9

### III.  Analysis

Mr. Gibson argues that the Court should reduce his sentence because (1) he was improperly subject to a two-point firearm enhancement at sentencing; (2) recent amendments to the Sentencing Guidelines support a reduction in his sentence; and, (3) he has successfully rehabilitated himself.  (ECF No. 84, at 1–2; ECF No. 89, at 2–4.)  The United States responds only to his first argument and contends that the proper vehicle for Mr. Gibson's challenge to his two-point enhancement would be a motion under 28 U.S.C. § 2255 rather than a motion for compassionate release.  (ECF No. 87, at 4–6.)

For the reasons articulated below, the Court will deny the Motion for Compassionate Release.  (ECF No. 84.)  The Court concludes that (1) Mr. Gibson must raise his challenge to his two-point enhancement through a § 2255 motion; (2) Mr. Gibson has not identified an amendment to the Guidelines relevant to his Motion; and, (3) Mr. Gibson's rehabilitation alone is not a basis for granting the Motion.  Accordingly, the Court concludes that Mr. Gibson does not offer any extraordinary and compelling reasons to support his request for release.  *See* 18 U.S.C. § 3582(c)(1)(A)(i).  Even if he had done so, the § 3553(a) factors weigh against his release.

### A.    Mr. Gibson has Exhausted his Administrative Remedies

Mr. Gibson first contends that he "exhausted all of [his] administrative remedies" before filing the instant Motion.  (ECF No. 84, at 1.)  Attached to his Motion Mr. Gibson has included documentation from the Bureau of Prisons ("BOP") indicating that he sought the same relief included in his Motion before the BOP.  (*See* ECF No. 84-1.)  When the BOP denied Mr. Gibson's administrative requests, he appealed those denials appropriately.  (ECF No. 84-1, at 4, 6.)  The United States agrees that Mr. Gibson has exhausted his administrative remedies.  (ECF No. 87, at 3.)

10

Because Mr. Gibson has appropriately exhausted his administrative remedies, the Court proceeds to consider the merits of Mr. Gibson's Motion for Compassionate Release.

**B.**      **<u>Elements 1 and 2</u>: The Motion for Compassionate Release Does Not Establish Extraordinary and Compelling Circumstances for Mr. Gibson's Release**

Mr. Gibson argues that extraordinary and compelling circumstances exist for three reasons: (1) he was subject to a two-point enhancement at sentencing that barred him from receiving reductions in his Guideline range; (2) recent amendments to the Guidelines counsel in favor of reducing his sentence; and, (3) he has successfully rehabilitated himself. (ECF No. 84, at 1–2; ECF No. 89, at 2–5). The Court addresses each argument in turn below, concluding that none of these circumstances constitute an extraordinary and compelling reason for release.

**1.**      **Mr. Gibson's Request for Reconsideration of his Sentencing Enhancement Does Not Raise an Extraordinary and Compelling Reason for Release**

Mr. Gibson seeks "reconsideration [of] the gun enhancement [he] received." (ECF No. 84, at 1.) When sentencing Mr. Gibson, the Court adopted the Probation Office's PSR, including the PSR's two-point enhancement for Mr. Gibson's possession of a dangerous weapon under U.S.S.G. § 2D1.1(b)(1). (*See* ECF No. 71 ¶ 20 (capturing PSR's two-point enhancement); ECF No. 74, at 1 (adopting PSR).) According to Mr. Gibson, the Court should reconsider the enhancement despite his agreement at sentencing that he possessed a dangerous weapon. (ECF No. 59 ¶ 7.) Mr. Gibson acknowledges the deputies who arrested him recovered the firearm from "a shed on [Mr. Gibson's] property," but Mr. Gibson asserts he "was not in possession of the home at that time due to an [Emergency Protective Order]." (ECF No. 84, at 1.) The Court previously accepted Mr. Gibson's plea, including his agreement in the Statement of Facts that he "maintained" the shed in question. (ECF No. 59 ¶ 7.) Mr. Gibson nevertheless asserts that there

11

were "several others with access to the premises"; that all "guns in [his] home were legal and registered"; and that "the gun in question was not registered to" Mr. Gibson.  (ECF No. 84, at 1.) Accordingly, Mr. Gibson contends that the Court improperly applied the two-point enhancement for Mr. Gibson's possession of a dangerous weapon.

The United States responds that "[t]o the extent that [Mr. Gibson] is arguing that his guideline sentence range was incorrectly calculated at the time of sentencing," Mr. Gibson may only bring such a claim through a motion to vacate, set aside, or correct his sentence under 28 U.S.C. § 2255.  (ECF No. 87, at 4 (citing *Ferguson*, 55 F.4th at 270).)  And as the United States identifies, Mr. Gibson signed a Statement of Facts, under oath and with his attorney present, acknowledging (1) his possession of a dangerous weapon; (2) the propriety of the PSR's inclusion of a two-point enhancement for that possession of a dangerous weapon; and, (3) the fact that he "maintained a premises for the purpose of manufacturing or distributing a controlled substance (the shed)."  (ECF No. 59 ¶ 7 ("[Mr. Gibson] possessed a dangerous weapon . . . under Sentencing Guideline § 2D1.1(b)(1)").)

The Court agrees with the United States that the Court could address Mr. Gibson's challenge to the two-point sentencing enhancement only through a § 2255 motion.  Section 2255 "is the exclusive method of collaterally attacking a federal conviction or sentence." *Ferguson*, 55 F.4th at 270.  And Mr. Gibson's challenge to the propriety of the two-point enhancement amounts to a collateral attack on his sentence. *See United States v. Bueno*, —F. Supp. 3d—, 2026 WL 510744, at *8 (E.D. Va. 2026) (determining that defendant's challenge to "purportedly erroneous offense level adjustments . . . amount[ed] to a . . . collateral attack on his sentence").

In his reply, Mr. Gibson seemingly abandons his request for "reconsideration" of the two-point enhancement.  Mr. Gibson explains that he is "not seeking to withdraw [his] plea or void

[his] plea agreement" and acknowledges that "§ 2255 is the exclusive method of collaterally attacking a federal conviction or sentence."[4] (ECF No. 89, at 1 (citing *Ferguson*, 55 F.4th at 270).) Rather, Mr. Gibson "seeks only that the Court reconsider [his] sentence in light of [his] *current* circumstances, the time [he has] served, and [his] rehabilitation" by applying the compassionate release provisions of § 3582(c). (ECF No. 89, at 1 (emphasis added).) Mr. Gibson further clarifies that his "reference to the firearm enhancement is not a challenge to that enhancement, but rather to explain that it prevented [him] from receiving *other sentence reductions* for which a zero-point criminal history offender might otherwise qualify." (ECF No. 89, at 1 (emphasis added).) As Mr. Gibson explains in his initial Motion, the Court's adoption of the PSR's two-point enhancement "prohibit[ed] [him], a zero criminal history person, from being able to receive early release for completing the RDAP program, the safety valve [U.S.S.G.] § 5C1.2, and also from the zero point offender program just passed in November 2023 [under U.S.S.G.] § 4C1.1." (ECF No. 84, at 1.)

Mr. Gibson correctly acknowledges that the two-point sentencing enhancement prevented him from receiving a reduction in his sentencing Guidelines range through U.S.S.G. §§ 4C1.1 or 5C1.2.[5] Both sections of the Guidelines permit a reduction in calculating a defendant's Guidelines range unless a court determines that the defendant possessed a dangerous weapon. *See* U.S.S.G. § 4C1.1(a)(7); U.S.S.G. § 5C1.2(a)(2). And Mr. Gibson's two-point enhancement

---

[4] Mr. Gibson's reply contains new arguments not already raised in his initial Motion. The Court would ordinarily refuse to consider such arguments. *See United States v. Taylor*, No. 3:22-cr-86 (MHL), 2025 WL 3124447, at *7 n.7 (E.D. Va. Nov. 7, 2025). But because Mr. Gibson proceeds *pro se*, the Court will nevertheless address Mr. Gibson's arguments on the merits.

[5] Mr. Gibson also contends that the two-point enhancement prevents him "from being able to receive early release for completing the [Residential Drug Abuse Program]." (ECF No. 84, at 1.) Mr. Gibson does not provide any authority for this claim.

13

under U.S.S.G. § 2D1.1(b)(1) barred his access to these reductions. But Mr. Gibson's argument that his sentencing enhancement prevented his access to these reductions again amounts to a collateral attack on the calculation of that range that the Court could only consider through a § 2255 motion.

To be sure, motions for compassionate release may accommodate some challenges concerning the calculation of a Guidelines range. The Fourth Circuit has recognized that a defendant may seek compassionate release when "subsequent changes in the law," or changes to the Guidelines, "mean that, if sentenced today, [the defendant's] term of imprisonment would be substantially shorter." *Davis*, 99 F.4th at 657. But Mr. Gibson does not identify a change in the Guidelines that, were he sentenced today, would result in a different calculation of his Guideline range or a lower term of imprisonment. To the contrary, Mr. Gibson merely argues that the Court should reduce his sentence because his two-point enhancement barred his access to other Guidelines reductions. Despite Mr. Gibson's suggestion in his reply that "[his] reference to the firearm enhancement is not a challenge to that enhancement," Mr. Gibson's argument reduces to just such a challenge. Accordingly, the proper vehicle for that challenge would be a § 2255 motion, rather than a motion for compassionate release. And Mr. Gibson has failed to identify any caselaw indicating that his inability to access various Guidelines reductions otherwise constitutes an extraordinary and compelling reason to reduce his sentence.

The Court therefore concludes that Mr. Gibson's challenge to the two-point enhancement is not an exceptional or compelling reason to reduce his sentence and will deny his Motion with respect to that challenge.

**2.      Mr. Gibson Fails to Identify Any Other Change in Law that Would Constitute an Extraordinary and Compelling Reason to Reduce his Sentence**

Mr. Gibson next contends that recent amendments to the Guidelines counsel in favor of a sentence reduction via compassionate release. According to Mr. Gibson, the Sentencing Commission adopted various amendments to the Guidelines in November of 2025, including "revisions to firearm-related offenses under U.S.S.G. § 2K2.1." (ECF No. 89, at 2.) Mr. Gibson asserts that "[t]hese amendments clarify when firearm enhancements apply, emphasizing that enhancements should reflect the defendant's actual conduct and intent, promoting proportionality and fairness." (ECF No. 89, at 2.)

A change in law may constitute an exceptional and compelling reason to reduce a defendant's sentence. *Davis*, 99 F.4th at 657–58. But Mr. Gibson has failed to identify any "change in law" relevant to his sentencing. Mr. Gibson did not receive any enhancement under § 2K2.1, which governs firearms enhancements when a defendant has an *underlying charge* concerning use or possession of a firearm. Instead, Mr. Gibson pleaded guilty to possession with the intent to distribute controlled substances and received a firearm enhancement to that underlying charge under § 2D1.1(b)(1).[6] In other words, even if the Sentencing Commission's recent amendments to § 2K2.1 were to constitute a change in law that would otherwise establish an extraordinary and compelling reason to reduce Mr. Gibson's sentence, those amendments do not govern the enhancement applied in his case. Any amendment to § 2K2.1 he raises would be irrelevant to his motion.

---

[6] Mr. Gibson does not identify, and the Court is not aware of, any changes made by the Sentencing Commission's November 2025 amendments to § 2D1.1(b)(1), the provision of the Guidelines at issue here.

15

Mr. Gibson further argues that "these amendments reflect an evolving policy landscape recognizing the need for individualized assessment and proportional sentences." (ECF No. 89, at 2.) Even assuming that "amendments reflect[ing] an evolving policy landscape" constitute a change in law for purposes of a motion for compassionate release, Mr. Gibson has failed to show that this "change in law" would result in a different Guidelines calculation or term of imprisonment were he sentenced today. Nor does he explain how, or in what way, these amendments would alter the "individualized assessment" already undertaken by the Court at sentencing.

The Court therefore concludes that Mr. Gibson fails to identify a change in law constituting an exceptional or compelling reason to reduce his sentence and will deny his Motion with respect to that argument.

### 2.    Mr. Gibson's Rehabilitation Alone Cannot Constitute an Extraordinary and Compelling Reason to Reduce his Sentence

Finally, Mr. Gibson asserts that his rehabilitation while incarcerated constitutes an extraordinary and compelling reason to reduce his sentence. In his Motion, Mr. Gibson explains that "[w]hile incarcerated, [he has] participated in many educational programs, completed treatment or therapy classes, maintained good behavior, and worked in the construction department for the entire time." (ECF No. 84, at 2.) And in his reply, Mr. Gibson contends that he has "made significant efforts toward rehabilitation, maintained clear conduct, and used [his] time in custody productively"; has "maintained good conduct and completed every available class and program"; and has "held two jobs while incarcerated and earned two professional certifications." (ECF No. 89, at 2–3.)

As explained above, the Court concludes that Mr. Gibson has not otherwise established an extraordinary and compelling reason to reduce his sentence. The Sentencing Commission's

Policy Statement with respect to compassionate release motions provides that "rehabilitation of the defendant is not, by itself, an extraordinary and compelling reason for purposes of [the] policy statement." U.S.S.G. § 1B1.13(d). Rather, "rehabilitation of the defendant while serving the sentence may be considered in combination with other circumstances." *Id.* Because Mr. Gibson has not established other extraordinary and compelling reasons to reduce his sentence, Mr. Gibson's rehabilitation alone cannot serve as a basis for compassionate release.[7]

The Court therefore concludes that Mr. Gibson's rehabilitation alone cannot constitute an exceptional or compelling reason to reduce his sentence and will deny his Motion with respect to that argument.

**C.    Element 3:  The § 3553(a) Factors Do Not Support a Reduction in Mr. Gibson's Sentence**

Even if Mr. Gibson were to satisfy the requirement for an "extraordinary and compelling" reason for his compassionate release, the § 3553(a) factors weigh against his release. In the interest of creating a full record, the Court discusses those factors here.

First, the nature and circumstances of the offense, 18 U.S.C. § 3553(a)(1), do not support reducing his term of imprisonment. Mr. Gibson's offense of conviction is extremely serious. Deputies found Mr. Gibson outside a residence in violation of an Emergency Protective Order.

---

[7] Even assuming that Mr. Gibson has established other factors on which the Court could find an extraordinary and compelling reason to reduce his sentence, Mr. Gibson does not (unsurprisingly given his *pro se* status) provide proper evidence of his rehabilitation. He has not provided any certificates of completion of coursework, disciplinary records, or other documents that the Court could rely upon to determine the extent of his rehabilitation. *See Bueno*, 2026 WL 510744, at *7–8 (concluding that defendant failed to show his rehabilitation, combined with other factors, supported compassionate release even where defendant provided character letters and disciplinary records); *United States v. Claiborne*, No. 3:99-cr-297-1 (REP), 2026 WL 413415, at *8–9 (E.D. Va. Feb. 13, 2026) (concluding that defendant established his rehabilitation as a factor in supporting extraordinary and compelling reasons to reduce his sentence in part because defendant "presented substantial evidence to support his rehabilitation argument").

Mr. Gibson possessed bullets and a variety of controlled substances in his truck. The deputies later discovered a firearm, additional controlled substances, and over $14,000 on the property and on Mr. Gibson's person. Moreover, the PSR noted that the residence belonged to Mr. Gibson's then-girlfriend, who filed the Emergency Protective Order against him and whose son may have been in the residence at the time. (ECF No. 71 ¶¶ 11, 49.) This conduct undoubtably is serious and weighs against release.

Next, Mr. Gibson's history and characteristics, § 3553(a)(1), do not support reducing his term of imprisonment. While the Court commends Mr. Gibson for engaging in rehabilitative efforts, Mr. Gibson has not provided the Court any other argument with respect to his history and characteristics that would counsel in favor of a reduction of his sentence. The Court acknowledges that Mr. Gibson has no other criminal history. (ECF No. 59 ¶¶ 30–42.) But the Court already accounted for Mr. Gibson's lack of criminal history by granting a downward variance. Without information in addition to his rehabilitation while incarcerated the Court cannot find that Mr. Gibson's history and characteristics warrant a reduction in his sentence.

The Court must also consider the need for the sentence to protect the public. § 3553(a)(2)(A), (C). Mr. Gibson contends that "[u]pon release, [he] will return to a stable, supportive family home, where [he has] longstanding family ties." (ECF No. 89, at 3.) He also has a "longstanding job . . . waiting for [him] upon release." (ECF No. 89, at 3.) But Mr. Gibson provides no detail on what that job would be. While the Court could presume that Mr. Gibson's family would provide him with support, the Court is not convinced on the current record that Mr. Gibson's release plans would sufficiently protect the public, particularly given Mr. Gibson's prior conduct in violating an Emergency Protective Order.

18

The remaining factors, including the need for the sentence to reflect the seriousness of the offense, promote respect for the law, and avoid unwanted sentencing disparities, weigh in Mr. Gibson's favor. § 3553(a)(2)(A)–(B), (a)(7). Mr. Gibson has served three years out of his five-year sentence. Nevertheless, given the nature and circumstances of the offense and the need to protect the public, the Court will not reduce Mr. Gibson's sentence.

On balance, the § 3553(a) factors do not outweigh the continuing need for the sentence imposed to reflect the seriousness of the offense for which he was sentenced. Mr. Gibson's 60-month sentence is sufficient but not greater than necessary to reflect the seriousness of his offense. The record before the Court does not justify Mr. Gibson's early release from federal imprisonment.

### IV. Conclusion

For the reasons articulated above, the Court will deny the Motion for Compassionate Release. (ECF No. 84.)

An appropriate Order shall issue.

Date: 5/21/26
Richmond, Virginia

_____ /s/
M. Hannah Lauck
Chief United States District Judge